**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION**

| | |
|---|---|
| MITCHELL BRACKNELL, ) | Case No.: 2:06-CV-268 |
| Plaintiff, ) | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. ) | |
| THE CITY OF MONTGOMERY, ALABAMA; and Officer DON FAVOR, in his individual capacity;, ) | |
| Defendant ) | |

COME NOW The City of Montgomery and William D. favor, by and through undersigned counsel, and, in support of their Motion for Summary Judgment, say as follows:

**PROCEDURAL HISTORY**

This case comes to this Court by complaint, which was originally filed by Mitchell Bracknell on March 23, 2006 (Doc. No. 1). In response to the city of Montgomery's motion to dismiss or, in the alternative, for a more definite statement, the plaintiff filed an Amended Complaint—which was allowed—on April 26, 2006 (Doc. No. 7), alleging an excessive force claim under 42 U.S.C. §1983 for the infringement of Plaintiffs Fourth Amendment rights against unreasonable search and seizure and Fourteenth Amendment right to due process, as well as state law claims for negligence against William D. Favor and negligent training and supervision against the city of Montgomery. The Amended Complaint invokes the Court's jurisdiction under 42 U.S.C. §1983, 28 U.S.C. §§ 1331, 1343, 2201, and 2202. The city of Montgomery filed its Answer, along with affirmative defenses on April 28, 2006 (Doc. No. 9), and William D. Favor filed his Answer and affirmative defenses on May 23, 2006 (Doc. No.13).

1

**FACTS**

On February 25, 2006, Sergeant William D. Favor, while working for the Montgomery Police Department as a second shift patrol officer, responded to a 911 call at 649 Chisholm Street in Montgomery. (Complaint, Doc. No. 1, p.3). The caller had whispered into the telephone, "Hurry up, hurry up, he's coming." She whispered her address and disconnected the call. Favor was the first officer on the scene. (Exhibit A., transcript of Favor, p.5).

While in route to the Chisholm Street location Sergeant Favor received the details of the call on his in-car computer. (Exhibit A., transcript of Favor, p.5). The data transmitted to him gave the name of Mitchell Bracknell with information regarding a stabbing or cutting. (Exhibit A, transcript of Favor, p.5). While Favor understood those details to be about a prior offense and not the subject of the call he was answering, Favor did know Mitchell Bracknell. (Exhibit A, transcript of Favor, p.5). He had arrested Bracknell approximately 8 years earlier and had had cases in the interim where Bracknell and/or his brother were suspects. (Exhibit A, transcript of Favor, p.3). The dispatcher relayed to Favor that the complainant had been whispering on the telephone. (Exhibit A., transcript of Favor, p.5). Favor also heard another officer, whose identity is unknown to Favor, announced over the radio that there were outstanding assault warrants on Mitchell Bracknell. (Exhibit A., transcript of Favor, p.5). Favor stated in his ABI interview that he supposed the subject call to be domestic in nature, and that it was between the female whispering on the telephone and Mitchell Bracknell. (Exhibit A., transcript of Favor, p.5).

When Favor exited his patrol car at 649 Chisholm Street, he observed a "white, possibly asian [sic] female," exit the front door (Exhibit A, transcript of Favor, p.1). She yelled for Favor to "get him," and asked that Favor not let *him* get away. Favor then observed a white male exit

the front door of the residence. She yelled to Favor that the man was "Mitchell." (Exhibit A, transcript of Favor, p.1). Bracknell then ran away from the scene. (Exhibit B, transcript of Bracknell, p.3). The female continued to yell, pleading for Favor not to let the man get away, and Favor attempted to give chase. (Exhibit A, transcript of Favor, p.1). Favor gave up the foot chase in the back yard of the residence and watched Bracknell jump several more fences, watching which way he was going. (Exhibit A, transcript of Favor, p.1).

The female continued yelling for Favor not to let Bracknell get away; that he would come back; that she knew that he would come back. (Exhibit A, transcript of Favor, p.1-2). After radioing the location and direction of travel of the suspect, Favor drove his patrol vehicle around to the 1600 block of Coliseum Boulevard, the approximate location where he had last seen Bracknell. (Exhibit A, transcript of Favor, p.2). He exited his vehicle. It was dark, and a heavy rain was falling. (Exhibit A, transcript of Favor, p.6) (Exhibit B, transcript of Bracknell, p.3). Favor, using his flashlight began a visual search of the area. Favor encountered the subject hiding in some bushes. (Exhibit A, transcript of Favor, p.5). Bracknell was lying on his side with his back against a brick wall and his right arm extended toward Favor. (Exhibit B, transcript of Bracknell, p.3) (Exhibit A, transcript of Favor, p.2). Believing that Bracknell was brandishing a "silver hand gun," Favor instantly pulled his service weapon up and fired as he made an evasive maneuver, the bullet striking Mitchell Bracknell in the neck area (Complaint, p.3, Doc. No.1) (Exhibit A, Favor, p.2) (Exhibit B, Bracknell, p.3). After securing Bracknell, Favor applied pressure to the wound and called for paramedics. (Exhibit A, transcript of Favor, p.2)

**ARGUMENT**

**I.  §1983 EXCESSIVE FORCE**

Plaintiff has alleged an excessive force claim under 42 U.S.C. §1983 claiming that both his Fourth Amendment rights against unreasonable seizure and his Fourteenth Amendment right to due process have been abridged as a result of his being shot.  In 1989 the United States Supreme Court ruled that the proper standard for addressing a "free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person" should be "properly analyzed under the Fourth Amendment's 'objective reasonableness' standard rather than under a substantive due process standard." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1867 (1989).  The Court reasoned that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Graham v. Connor, 490 U.S. at 396, 109 S.Ct. at 1867-1868.

In the case at bar, Defendants have asserted their respective rights under the doctrine of qualified immunity in addition to the general defense available to them under the Graham "objective reasonableness" standard.  An analysis of the plaintiff's Fourth Amendment claim, according to the U.S. Supreme Court's decision in Saucier v. Katz must take two separate, but very similar courses. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).  In that case the court examined the similarities and differences between the analysis for whether an excessive force Fourth Amendment violation had occurred under Graham, and the analysis for qualified immunity set out in Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).  In Saucier, the Court of Appeals, after applying the objective

reasonableness standard set out in Graham, had ruled that the plaintiff's Fourth Amendment right was clearly established, and that the reasonableness inquiry into excessive force required thereby meant that the court did not need to consider aspects of qualified immunity. The Saucier Court overruled that decision in ruling that an analysis must be made under both standards independently of the other. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

The inquiry in this case, then, must take two separate, but very similar paths, either of which may entitle the defendants to summary judgment.

**A. Objective Reasonableness Standard**

In Graham v. Connor, the Supreme Court explained that, in the context of a Fourth Amendment excessive force claim, "the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1867 (1989); *see also* Terry v. Ohio, supra, 392 U.S. 1, 20-22, 88 S.Ct. 1868, 1879-1881. Just as "[t]he Fourth Amendment is not violated by an arrest based on probable cause, even though the wrong person is arrested, nor by the mistaken execution of a valid search warrant on the wrong premises, . . . the same standard of reasonableness at the moment applies: 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.'" Graham *supra citing* Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971); *see* Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987) (Fourth Amendment probable cause); Johnson v. Glick, 481 F.2d 1028, 1033 (mistaken execution of search warrant).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." Id. Sergeant William Favor was forced to make just such a "split-second judgment" in a situation which was "tense, uncertain, and rapidly evolving:" he was, literally, in a dark alleyway between two houses searching for a suspect in a domestic abuse call in a driving rain; a suspect whom he had arrested in the past, whom he knew to be wanted on several assault warrants, and whom he knew had been involved in a stabbing or cutting at some point in the past.  How Favor reacted in the instant after his flashlight panned across Mitchell Bracknell hiding in the bushes with his arm outstretched, must be viewed through the eyes of any other reasonable police officer in the same situation.

The Eleventh Circuit has opined that "[d]eadly force is 'reasonable' for the purposes of the Fourth Amendment when an officer '(1) has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others or that he has committed a crime involving the infliction or threatened infliction of serious physical harm;' (2) reasonably believes that the use of deadly force was necessary to prevent escape; and (3) has given some warning about the possible use of deadly force, if feasible." Robinson v. Arrugueta, 415 F.3d 1252, 1255 (11th Cir.2005) *citing* Vaughan v. Cox, 343 F.3d 1323, 1329-30 (11th Cir.2003).

The determination of reasonableness must be made from the perspective of the officer. Id.  Sergeant Favor had probable cause to believe that Mitchell Bracknell posed a threat of serious physical harm.  Not only did he know that he was there on a domestic call, that the complainant had begged him not to let the man get away, he also knew Mitchell Bracknell; he had arrested him eight years before, had been involved in investigations of Bracknell and/or his

6

brother, and, more importantly, he knew that Mitchell Bracknell had several warrants out for his arrest on assault charges, and that he had fled the scene earlier.

As to the second element, the Eleventh Circuit has found that "[b]ecause it is constitutionally reasonable for an officer to use deadly force when a suspect is threatening escape and possible harm to others, it is also constitutionally reasonable for an officer to use deadly force when he has probable cause to believe that his own life is in peril" Id.  When Favor saw what he believed to be a firearm aimed at him through the rain-streaked beam of his flashlight, it was reasonable for him to believe that his life was in immediate danger and to use the level of force that he used to protect his own life.  More importantly, any other officer faced with the same set of facts could reasonably believe that such a use of force was necessary.

On the third element, it is clear from the facts that the rapidity with which the subject events unfolded made any warning about the use of deadly force unfeasible.  William Favor believed his life to be in immediate danger, and he believed that the situation called for instantaneous action.

Based on the test set out in Robinson v. Arrugueta, then, William Favor's use of force on the night in question was objectively reasonable under the Fourth Amendment, and, as such, William Favor is entitled to a summary judgment on the §1983 excessive force claim.

### B. Qualified Immunity

"Qualified immunity protects government actors performing discretionary functions from being sued in their individual capacities."  Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir.2003) *see also* Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).  In

dealing with the issue of qualified immunity of a police officer, the U.S. Supreme Court has said the following:

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).  The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Ibid.  As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) *(per curiam).*

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).

"To be shielded from suit by qualified immunity, a public official must first show that he was acting within the scope of his discretionary authority." McCray v. City of Dothan, Not reported in F.3d, 2003 WL 23518420; *see also* Vinyard v. Wilson, 311 F.3d 1340, 1336 (11th Cir.2002).  "If he does so, the burden then shifts to the plaintiff to show, first, facts establishing that a constitutional violation occurred, and second, that the constitutional right was clearly established at the time of the violation."  McCray *supra;* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

Nowhere in the Complaint or Amended Complaint is it alleged that William Favor was operating under anything but his discretionary authority.  In fact, the plaintiff himself avers in his Amended Complaint that was "[a]t all times material hereto, Favor was acting as a law enforcement officer pursuant to state statute and the ordinances, customs and policies of the

8

Montgomery Police Department," (Amended Complaint, Doc. 7, item 12). The Eleventh Circuit, however, has defined discretionary authority by saying that a "government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir.1994), *citing* Rich v. Dollar, 841 F.2d 1558 (11th Cir.1988). In that same case, the court went on to clarify that the term "discretionary authority" included "all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" Jordan v. Doe, 38 F.3d at 1565 (11th Cir.1994), *citing* Rich v. Dollar, 841 F.2d at 1564 (11th Cir.1988).

In the case at bar, it is clear that the search and subsequent apprehension of Mitchell Bracknell by William Favor was undertaken pursuant to the performance of Favor's duties as a police officer. It is equally clear that the said search and apprehension were within the scope of his authority as a police officer. There is no real question that Favor was acting within his discretionary authority.

The burden, then, must now shift to the plaintiff to show "first, facts establishing that a constitutional violation occurred, and second, that the constitutional right was clearly established at the time of the violation." McCray v. City of Dothan, Not reported in F.3d, 2003 WL 23518420. Since it is conceded by Defendants that being shot, if the facts were viewed in a light most favorable to the plaintiff, could establish a constitutional violation, the "threshold question" of whether a constitutional right was involved at all may be by-passed here. Saucier v. Katz, 533 U.S. 194 at 201, 121 S.Ct. at 2156 (2001).

In determining whether a right was clearly established for the purposes of qualified immunity, the courts apply a slightly more subjective standard of reasonableness than the standard set out in Graham v. Connor. "The right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194 at 201, 121 S.Ct. at 2156 (2001) *emphasis added, citing* Anderson v. Creighton, 483 U.S. at 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Put more succinctly, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is *whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.* Saucier v. Katz, 533 U.S. 194 at 201, 121 S.Ct. at 2156 (2001); *see also* Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999).

Because it is legal for an officer to use the level of force used in this instance when he believes his life to be in immediate jeopardy, it would *not* be clear to such a reasonable officer that such conduct would be unlawful. The central issue in a qualified immunity analysis is not the mistake as to the facts, but the extent to which there may have been a mistake as to the legality of his actions. Saucier v. Katz, 533 U.S. 194 at 205, 121 S.Ct. at 2159 (2001). The right to be free from unreasonable seizure in this case is not so "clearly established" as to deprive William Favor of his qualified immunity, because the mistake was not made as to the legality of his actions, but to the facts which precipitated those actions. In other words, the right was not "clearly established" in the officer's eyes based on the facts as he saw them that night.

## II. MUNICIPAL LIABILITY UNDER 42 U.S.C. §1983

While William Favor is entitled to qualified immunity in his individual capacity, that immunity does not extend to the City of Montgomery.  Heggs v. Grant, 73 F.3d 317 (11th Cir.1996) *footnote 5*; Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 165-67, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517, 523 (1993).  In order to prevail against the city under 42 U.S.C. §1983, however, the plaintiff must show that the city had in place a policy or custom which proximately caused the constitutional deprivation complained of.  Monell v. Department of Social Services of New York City, 436 U.S. 658, 694, 98 S.Ct. 2018.

While Plaintiff avers in his Amended Complaint that Favor was "[a]t all times material hereto . . . acting as a law enforcement officer pursuant to the . . . customs and policies of the Montgomery Police Department," he has failed to identify which policy or custom, if any, caused or contributed to his damages in the instant case. (Amended Complaint, Doc. 7, item 12).  This claim is one for which the city of Montgomery is entitled to a judgment as a matter of law because "[v]ague and conclusory allegations will not support a claim under §1983."  Hall v. Smith, 170 Fed.Appx 105, 107-108 (11th Cir.2006); Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n. 16 (11th Cir.2001).

## III. STATE LAW CLAIMS – Discretionary Function Immunity, §6-5-338

Plaintiff has alleged three state law claims in this suit: negligence and battery against William D. Favor, and negligent training and supervision against the city of Montgomery.  In Alabama, police officers are afforded certain immunities from tort liability.  §6-5-338(a) Ala. Code (1975) states that, "[e]very peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state . . .shall at all times be deemed to be officers

of this state, and as such shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." §6-5-338(a) Ala. Code 1975.

It is undisputed that William Favor was performing within the line and scope of his duty when he searched for and subsequently apprehended Mitchell Bracknell. "Alabama law has defined 'discretionary acts' as "[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take" and those requiring "exercise in judgment and choice and [involving] what is just and proper under the circumstances.'" Williams v. Crook, 741 So.2d 1074, 1076-78 (Ala.1999) *citing Black's Law Dictionary* 467 (6th ed.1990); see also Smith v. Arnold, 564 So.2d 873, 876 (Ala.1990). "Discretionary acts require 'constant decision making and judgment.'" Williams v. Crook, 741 So.2d at 1076 *citing* Phillips v. Thomas, 555 So.2d 81, 85 (Ala.1989). Sergeant Favor's decision to fire his weapon was a discretionary act, as the Alabama Supreme Court has defined it, and he is, therefore, entitled to §6-5-338 discretionary function immunity on the state law claims lodged against him.

As Sergeant Favor's employer, the City of Montgomery, too, is afforded immunity under the statute. §6-5-338(b) clearly extends discretionary function immunity not only to the officers themselves, but to "peace officers and governmental units or agencies authorized to appoint peace officers." §6-5-338(b) Ala. Code (1975).

**IV. SUMMARY JUDGMENT STANDARD**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing or pointing out to the district court that the non-moving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. Celotex Corp. v. Catrett, 477 U.S. at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires a non-moving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Fed. R. Civ. P. 56(c).

After the non-moving party has responded to a motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Yannella v. City of Dothan, 66 F. Supp. 2d 1233 (M.D. Ala. 1999).

## CONCLUSION

Sergeant William Favor's use of force was objectively reasonable based upon the facts which unfolded on the night of February 26, 2006 and the plaintiff can show no set of facts which

would create a genuine issue on this point.  Even if they could, Favor was performing a discretionary act, and Bracknell's right to be free from *unreasonable* seizure was not so "clearly established" in Favor's eyes so as to deprive him of his qualified immunity.

With regard to the §1983 claim against the city of Montgomery directly, the plaintiff has failed to allege a policy or custom sufficient to support such a claim.  As to the state law claims against both the city of Montgomery and William Favor, individually, both defendants are entitled to discretionary function immunity under §6-5-338 Ala. Code (1975).

Plaintiff can show no facts which would create a genuine issue on these claims, and William D. Favor and the city of Montgomery are entitled to summary judgments as a matter of law thereon.

Respectfully submitted,

/s/Wallace D. Mills
Wallace D. Mills (MIL 090)
Attorney for Favor and City

OF COUNSEL:
City of Montgomery Attorney's Office
P.O. Box 1111
Montgomery, AL 36101-1111
Phone: (334) 241-2050
Fax: (334) 241-2310

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of October, 2006, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

J. Scott Hooper
The Hooper Law Firm, P.C.
P.O. Box 230894
Montgomery, AL 36123-0894

/s/Wallace D. Mills
Of Counsel